UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | CASE NO. 1-17-01571-HWV |
| QUEEN A. DICKEY | : | |
| | : | CHAPTER 13 |
| Debtor | : | |
| | : | |
| QUEEN A. DICKEY and | : | 406 Wynwood Road |
| JONATHAN A. DICKEY, SR. (non-filing party) | : | York, Pennsylvania |
| | : | |
| Movant | : | |
| v. | : | |
| | : | |
| WILMINGTON TRUST, N.A. as Trustee for Bear | : | |
| Stearns ALT-A Trust 2006-4, Mortgage | : | |
| Pass-Through Certificates, Series 2006-4, | : | |
| YORK COUNTY TAX CLAIM BUREAU | : | |
| SPRINGETTSBURY TOWNSHIP, and | : | |
| YORK SUBURBAN SCHOOL DISTRICT | : | |
| | : | |
| Respondents | : | |

### CERTIFICATE OF SERVICE

I, Stacy A. Sollenberger, Legal Assistant with the law firm Schiffman, Sheridan & Brown, P.C. hereby certify that on May 2, 2019, a true and correct copy of the attached **Order and Motion to Approve Sale of Real Property Free and Clear of Liens, Claims and Encumbrances and Approving Distribution of Proceeds** were served by electronic means and/or first-class mail, postage prepaid on the following parties:

SEE ATTACHED LIST.

SCHIFFMAN, SHERIDAN & BROWN P.C.

By:   /s/ Stacy A. Sollenberger
      Stacy A. Sollenberger

US Dept. of Education/GLE
2401 International
P.O. Box 7859
Madison, WI 53707-7859

AmeriCredit Financial Services, Inc. dba GM
P O Box 183853
Arlington, TX 76096-3853

Barclays Bank Delaware
125 S. West Street
Wilmington, DE 19801-5014

Barclays Bank Delaware
P.O. Box 8803
Wilmington, DE 19899-8803

Capital Accounts LLC
P.O. Box 140065
Nashville, TN 37214-0065

Capital One
P.O. Box 30285
Salt Lake City, UT 84130-0285

Capital One Bank USA NA
P.O. Box 30281
Salt Lake City, UT 84130-0281

Charles A. Rausch
17 East Market Street
York, PA 17401-1205

Commonwealth of Pennsylvania
Bureau of Labor and Industry
Office of Unemp Comp Tax Services OUCTS
PO Box 60848
Harrisburg, PA 17106-0848

Credit One Bank
P.O. Box 98872
Las Vegas, NV 89193-8872

Credit One Bank
P.O. Box 98873
Las Vegas, NV 89193-8873

Charles J DeHart, III (Trustee)
8125 Adams Drive, Suite A
Hummelstown, PA 17036-8625

Webb Bank/Fingerhut
6250 Ridgewood Road
Saint Cloud, MN 56303-0820

First Premier Bank
3820 N. Louise Avenue
Sioux Falls, SD 57107-0145

First Premier Bank
601 S Minnesota Avenue
Sioux Falls, SD 57104-4868

GM Financial
P.O. Box 181145
Arlington, TX 76096-1145

Genesis Bank Card Service
P.O. Box 4499
Beaverton, OR 97076-4499

Great Lakes Higher Education
P.O. Box 7860
Madison, WI 53707-7860

Internal Revenue Service
Insolvency Section - BK notice
PO Box 7346
Philadelphia, PA 19101-7346

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

McNamara Auto Sales
1775 Rodney Road
York, PA 17408-4608

Navient
123 Justison Street
3rd Floor
Wilmington, DE 19801-5363

Navient
P.O. Box 9500
Wilkes-Barre, PA 18773-9500

Navient Solutions, LLC
220 Lasley Ave
Wilkes-Barre, PA 18706-1430

Navient Solutions, LLC
220 Lasley Ave
Wilkes-Barre, PA 18706
Navient Solutions, LLC
220 Lasley Ave
Wilkes-Barre, PA 18706-1430

Navient Solutions, LLC on behalf of
United Student Aid Funds, Inc.
Attn: Bankruptcy Litigation Unit E3149
PO Box 9430
Wilkes Barre, PA 18773-9430

Penn Credit Corp.
916 S. 14th Street
Harrisburg, PA 17104-3425

Pennsylvania Department of Revenue
Dept. 280946
ATTN: Bankruptcy Division
Harrisburg, PA 17128-0946

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Premier Bankcard, Llc
Jefferson Capital Systems LLC Assignee
Po Box 7999
Saint Cloud Mn 56302-7999

Select Portfolio Servicing
10401 Deerwood Park BV
Jacksonville, FL 32256-5007

Select Portfolio Servicing, Inc.
P.O. Box 65250
Salt Lake City, UT 84165-0250

Springettsbury Township
1501 Mount Zion Road
York, PA 17402-9085

U.S. Bank on behalf of
Educational Credit Manageme
Educational Credit Management Corp
PO BOX 16408
St. Paul, MN 55116-0408

US Department of Education
Claims Filing Unit
PO Box 8973
Madison, WI 53708-8973

York County Tax Claim Bureau
28 East Market Street
York, PA 17401

United States Trustee
228 Walnut Street, Suite 1190
Harrisburg, PA 17101-1722

United Student Aid Funds, Inc (USAF)
PO Box 8961
Madison WI 53708-8961

York Suburban School District
Ronald H. Provard Education Center
1800 Hollywood Drive
York, PA 17403

James Warmbrodt
701 Market Street Suite 5000
Philadephia, PA 19106-1541

WebCollex LLC
c/o JD Receivables LLC
PO Box 382656
Germantown, TN 38183-2656

Wilmington Trust, NA, et al
c/o Select Portfolio Servicing, Inc.
P.O. Box 65250
Salt Lake City, UT 84165-0250

York Hospital
1001 S George St
York, PA 17403-3645

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

In re:

Queen A. Dickey,

**Debtor 1**

Chapter: 13

Case number: 1:17−bk−01571−HWV

Document Number: 58

Matter: Motion for Sale Free and Clear of Liens

QUEEN A. DICKEY and JONATHAN A. DICKEY, SR.
(non−filing party)
**Movant(s)**

vs.

WILMINGTON TRUST, N.A. as Trustee for Bear Stearns
ALT−A Trust 2006−4, Mortgage Pass−Through Certificates,
Series 2006−4,
YORK COUNTY TAX CLAIM BUREAU,
SPRINGETTSBURY TOWNSHIP and YORK SUBURBAN
SCHOOL DISTRICT
**Respondent(s)**

### Order

Unless earlier served through CM/ECF, **IT IS ORDERED** that service of this Order and the above−referenced Motion shall be made by the moving party on all respondent(s) named in the Motion claiming an interest in the property, counsel, and in a Chapter 11 case service shall also be made upon the Trustee, if any, U.S. Trustee and the individuals identified in F.R.B.P. 4001(a)(1) and L.B.R 4001−6. Service shall be made within seven (7) days from the date hereof and certification of service filed with this Court within fourteen (14) days from the date hereof.

**IT IS FURTHER ORDERED** that answers to the Motion must be served on the moving party and a copy filed with this Court, within fourteen (14) days from the service date of this Order. If no Response is filed, relief may be granted. A hearing will be held if a responsive pleading is timely filed, requested by the moving party, or ordered by the Court. If a default order has not been signed and entered, the parties or their counsel are required to appear in Court at the hearing on the below date and time.

| United States Bankruptcy Court Ronald Reagan Federal Building, Bankruptcy Courtroom (3rd Floor), Third & Walnut Streets, Harrisburg, PA 17101 | Date: 5/21/19  Time: 09:30 AM |
|---|---|

Dated: May 2, 2019

By the Court,

*Henry W. Van Eck*

Honorable Henry W. Van Eck
United States Bankruptcy Judge
By: KADavis, Deputy Clerk

Initial requests for a continuance of hearing *(L.B.F. 9013−3, Request to Continue Hearing/Trial with Concurrence)* shall be filed with the Court. Requests received by the Court within twenty−four (24) hours of the hearing will not be considered except in emergency situations. Additional requests for continuance must be filed as a Motion.

Requests to participate in a hearing telephonically shall be made in accordance with L.B.R. 9074−1(a).

Electronic equipment, including cell phones, pagers, laptops, etc., will be inspected upon entering the Courthouse. These devices may be used in common areas and should be turned to silent operation upon entering the Courtroom and Chambers.

Photo identification is required upon entering the Courthouse.

orreshrg(5/18)

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | CASE NO. 1-17-01571-HWV |
| QUEEN A. DICKEY | : | |
| | : | CHAPTER 13 |
| Debtor | : | |
| | : | |
| QUEEN A. DICKEY and | : | 406 Wynwood Road |
| JONATHAN A. DICKEY, SR. (non-filing party) | : | York, Pennsylvania |
| | : | |
| Movant | : | |
| v. | : | |
| | : | |
| WILMINGTON TRUST, N.A. as Trustee for Bear | : | |
| Stearns ALT-A Trust 2006-4, Mortgage | : | |
| Pass-Through Certificates, Series 2006-4, | : | |
| YORK COUNTY TAX CLAIM BUREAU | : | |
| SPRINGETTSBURY TOWNSHIP, and | : | |
| YORK SUBURBAN SCHOOL DISTRICT | : | |
| | : | |
| Respondents | : | |

**MOTION TO APPROVE SALE OF REAL PROPERTY
FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES
AND APPROVING DISTRIBUTION OF PROCEEDS**

The Motion of Queen A. Dickey (hereinafter "Debtor") and her husband, Jonathan A.
Dickey, Sr., by and through her attorneys, Schiffman, Sheridan & Brown, P.C., to Approve the
Sale of Real Property Free and Clear of Liens, Claims and Encumbrances and Approving
Distribution of Proceeds, is as follows:

1.     On April 17, 2017, the Debtor filed her Petition under Chapter 13 of the United
States Bankruptcy Code to the above case number in the within Court.

2.     The Debtor is a joint owner with Jonathan A. Dickey, Sr. ("Mr. Dickey") of certain
real estate located at 406 Wynwood Road, York, York County, Pennsylvania (the "Real
Property").

3.     The Debtor and Mr. Dickey have entered into an Agreement for the sale of the Real
Property (the "Agreement") to Jimmy Huynh (the "Buyer").   The Agreement provides for the total
consideration of $260,000.00 for the purchase of the Real Property.     A true and correct copy of
the Agreement is attached hereto and labeled Exhibit "A".   The Buyer is an unrelated third party.

4.    The Debtor believes that the purchase price offered sets forth fair consideration given the current market conditions, and the length of time this property has been listed.

5.    The Real Property may be subject to the following liens:

(a)    A mortgage lien in favor of Wilmington Trust, N.A. as serviced by Select Portfolio Servicing, Inc. ("SPS") securing a debt in the amount of approximately $505,275.15 at the time of the filing of the instant case, recorded in the Office of the Recorder of Deeds in and for York County (the "Mortgage"); and

(b)    A municipal lien in favor of Springettsbury Township for refuse services securing a debt in the approximate amount of $2,796.93 at the time of filing of the instant case.

6.    The Debtor and Mr. Dickey propose to pay costs and expenses associated with the sale of the Real Property at closing as follows:

(a)    Any notary or incidental recording fees required to be paid by the Debtor and Mr. Dickey as Sellers;

(b)    Any costs associated with the preparation of the deed or normal services with respect to closing;

(c)    Attorney fees to Schiffman, Sheridan & Brown, P.C. in the amount of $3,000.00 for services and $181.00 for costs in connection with this transaction.   All fees and expenses payable to Schiffman, Sheridan & Brown, P.C. shall be subject to such approval as the Bankruptcy Court may require.

(d)    Realty transfer tax, if any, required to be paid by Debtor and Mr. Dickey, as Sellers;

(e)    Any present and past due real estate taxes owed and municipal services owed on the Real Property, prorated to the date of sale; and

(f)    Real Estate Commission to Century 21 Core Partners in the amount of up to six percent (6%) of the total sales consideration for services rendered to Seller by Century 21 Core Partners in connection with this sale.

7.    Subsequent to the payment of the costs of the sale as set forth above, the following items shall be paid from the proceeds of the sale of the Real Property:

• Payment to SPS on behalf of Wilmington Trust, N.A. on account of the Mortgage up to an amount sufficient to payoff the loan secured by the Mortgage; in all events the amount will be no less than the $236,185.90 agreed to in SPS's short sale approval, attached hereto and labeled Exhibit "B."

2

8.      The Debtor and Mr. Dickey request that this sale be free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances to be payable and paid as set forth in Paragraphs 6 and 7 and as represented in the proposed Closing Disclosure, attached hereto and labeled Exhibit "C".

9.      The Debtor and Mr. Dickey believe that the consideration payable by the Buyer under the Agreement for the purchase of the Real Property is fair and reasonable.

10.      Code Section 363(b)(1) provides that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate".   Section 105(a) provides, in relevant part, that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title".

11.      Code Section 363(f) provides:

> (f)      The [Debtor] may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if – –
>
> (1)      applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2)      such entity consents;
>
> (3)      such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)      such interest is bona fide dispute; or
>
> (5)      such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. §363(f).

12.      Code Section 363(f) is drafted in the disjunctive.   Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtor's sale of the Real Property free and clear of all liens, claims, interests, and encumbrances (collectively, the "Liens and Claims") as required by the Agreement.

13.      The Debtor submits that this Motion satisfies at least one of the five conditions of Code §363(f) and that the Liens and Claims will be adequately protected by having them attach to the net proceeds of sale, subject to any claims and defenses the Debtor may possess with respect thereto.

3

14. Code Section 363(m) provides:

(m)    The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. §363(m).

15.    While the Bankruptcy Code does not define "good faith", the Court of Appeals for the Third Circuit ruling in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986) held that:

[t]he requirement that a purchaser act in good faith...speaks for the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

788 F.2d at 147 (citations omitted). The Debtor and Mr. Dickey submit that the Agreement is a negotiated, arm's length transaction in which the Buyer has at all times acted in good faith under the *Abbotts Dairies* standards. The Debtor and Mr. Dickey thus request that the Court make a finding that the Buyer will have purchased the Real Property in good faith within the meaning of Section 363(m).

16.    The Debtor and Mr. Dickey also request that the order approving the sale be effective immediately upon entry and the stay of ten (10) days provided for in Bankruptcy Rule 6004(h) not be applicable hereto.

WHEREFORE, Queen A. Dickey, Debtor herein, and Jonathan A. Dickey, Sr., respectfully request that the Court enter an Order:

(a)    Approving the sale of the Real Property located at and known as 406 Wynwood Road, York, York County, Pennsylvania free and clear of all liens, claims and encumbrances, except for those claims which consist of easements for utilities and rights of way of record, or as may exist and are visible on the Real Property;

(b)    Allowing and directing payment of the costs and expenses involved with the sale of the Real Property as set forth above;

(c)    Allowing attorney fees to Schiffman, Sheridan & Brown, P.C. in the

4

amount of $3,000.00 for services and $181.00 for costs in connection with this transaction.   All fees and expenses payable to Schiffman, Sheridan & Brown, P.C. shall be subject to such approval as the Bankruptcy Court may require;

(d)     Providing for payment of realty transfer tax, if any, required to be paid by Debtor and Mr. Dickey, as Sellers;

(e)     Providing for any present and past due real estate taxes owed and municipal services owed on the Real Property, prorated to the date of sale;

(f)     Providing for payment of real estate commission of up to six percent (6%) of the sale consideration to Century 21 Core Partners;

(g)     Providing for payment of any remaining net proceeds to Select Portfolio Servicing, Inc. on behalf of Wilmington Trust, N.A. up to an amount sufficient to pay off the debt secured by the Mortgage, but in no event less than $236,185.90;

(h)     That the sale is to a good faith purchaser and for fair market value within the meaning of 11 U.S.C. §363(m) and In re: Abbotts Dairies of Pennsylvania, Inc., 788 F 2nd 142(3rd Cir. 1986);

(i)     That provides that the Debtor is empowered to execute any and all documents necessary to effectuate the sale of the Real Property;

(j)     That provides that Fed. R. BankR. P. Rule 6004(h) is not applicable, and the Real Property may be sold and purchased promptly; and

(k)     That provides for such other and further relief as is just and proper.

Respectfully submitted,

SCHIFFMAN, SHERIDAN & BROWN, P.C.

By:   /s/ Tracy L. Updike
        Tracy L. Updike, Esquire
        2080 Linglestown Road, Suite 201
        Harrisburg, PA 17110
Date: May 1, 2019          (717) 540-9170

5

# EXHIBIT "A"

SHORTSALE ADDENDUM AND OFFER INSTRUCTIONS

Property Address: 406 Wynwood Rd, York, PA 17402

*This Addendum supersedes all terms of the Agreement of Sale. This addendum must be presented with the offer & it must be signed by all parties (Buyers, Buyer's Agent, Sellers, Seller's Agent)

1. The Agreement of Sale is subject to final Shortsale approval by Shortsale lender (s).

2. It is the Buyer responsibility to provide an estimated HUD1 (Seller side ONLY) within 10 days to Seller's Agent. This HUD1 must include all liens. Title to be fully searched before HUD1 is provided.

3. Buyer and Seller understand and agree that: No Shortsale ender is required or obligated to accept a Shortsale. Shortsale ender may require some terms of the Agreement of Sale be changed in exchange for approval of a Shortsale. Buyer and Seller are not obligated to agree to any of Shortsale lender' proposed terms. Buyer understands that should they spend any monies in an effort to meet their obligations under the Agreement of Sale (appraisal, credit check, property inspections, and others) they will not be refunded by Seller should the Agreement of Sale fail to close due to Shortsale lender's rejection of the Shortsale.

4. Property is sold AS-IS. Buyers are encouraged to inspect property before writing an offer. All inspections are for BUYERS KNOWLEDGE ONLY and NO REPAIRS will be done by the Seller. If Buyer's lender requires any repairs to approve the buyer's financing, Buyer is responsible for all those repairs. Seller will allow access to Buyer to make those repairs. Seller may not be able to maintain property in present condition until Settlement. Buyer understands this and accepts property in as is condition.

5. If the utilities are off, Buyer is responsible to arrange for any utilties that need to be turned on for either appraisal or Inspections. Buyer, at Buyer's expense, will turn off utilities right after appraisal or inspections are completed.

6. Shortsale Lender(s) will determine date to close and this date will be noted on Final Shortsale Approval letter.
A Shortsale approval letter will generally give Buyer 20-30 days to close from the time it is issued. It is Buyer's responsibility to be ready to close by such date as determined by lender once Shortsale is approved.

7. Immediate response is required by most lenders reviewing a Shortsale. If the lender reviewing the Shortsale sends a counter-offer, this counter-offer will be sent to the Buyer's Agent. Buyer must respond to the counter-offer, in writing, within 48 hours of its receipt by Buyer's Agent. Seller may, at Seller's discretion, VOID the Agreement of Sale if no response is sent in 48 hrs & Buyer hereby releases Seller from this Agreement of Sale automatically.

~~8. Buyer will be responsible for a $1,950 Loss Mitigation Fee (Shortsale Negotiation fee) to be paid at settlement to~~ ~~CENTURY 21~~ ~~CORE PARTNERS. This is not included as part of the purchase price listed in the agreement of sale. This is an additional expense to~~ ~~Buyer. Buyer is required to notify buyer's lender (if applicable) of this fee at time of loan application by providing Buyer's lender a~~ ~~copy of this Addendum. This fee is to be listed in the HUD1 on the Buyer's side in the 1300 section.~~

~~9. Shortsale lender (Seller's lender) will be asked to pay for both sides of the transfer tax.~~

10. HOA: if applicable, buyer will be responsible for resale certificate, capital contributions, or any necessary HOA required repairs and/or any back HOA dues needed to bring current if Shortsale lender refuses to pay these on behalf of the seller

11. Septic Systems: If applicable, buyer is responsible for any fees associated with inspection of septic systems, including uncovering, recovering, pumping, inspection, hydraulic load test if necessary.

**BY SIGNING THIS ADDENDUM, BUYER AND SELLER ACCEPT ALL TERMS ABOVE.

*** Third Party Approval must be received by: _____

| BUYER | | DATE | | SELLER | Jonathan A Dickey, Sr |
| | | | | | |
| BUYER | | DATE | | SELLER | Queen A Dickey |
| | | | | | |
| BUYER'S AGENT | | DATE | | SELLER'S AGENT | Michael Segarra |
| | | | | | DATE |

# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

ASR

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

## PARTIES

| BUYER(S): | SELLER(S): |
|---|---|
| Jimmy Huynh | Jonathan A. Dickey, Sr and Queen A. Dickey |

| BUYER'S MAILING ADDRESS: | SELLER'S MAILING ADDRESS: |
|---|---|
| ~~3800 Rursbory Dr~~ 234 Mov' st ~~York, PA 17402~~ York PA 17402 | |

## PROPERTY

ADDRESS (including postal city) 406 Wynwood rd
York, PA 17402                                                                         ZIP 17402
in the municipality of Springettsbury TWP                                    , County of York
in the School District of York Suburban                         , in the Commonwealth of Pennsylvania,
Tax ID #(s) 46-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                                                                      and/or
Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): 1808/1441

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Buyer is not represented by a broker)

| Broker (Company) Remax Patriots | Licensee(s) (Name) Adam Flinchbaugh |
|---|---|
| Company License # RB067528 | State License # RS214100L |
| Company Address 1770 E Market St | Direct Phone(s) 717-840-4848 |
| York, PA 17402 | Cell Phone(s) 717-577-8953 |
| Company Phone 717-840-4848 | Email myteam@adamflinchbaugh.com |
| Company Fax | Licensee(s) is (check only one): |
| Broker is (check only one): | ☑ Buyer Agent (all company licensees represent Buyer) |
| ☑ Buyer Agent (Broker represents Buyer only) | ☐ Buyer Agent with Designated Agency (only Licensee(s) named |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | above represent Buyer) |
| | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Seller is not represented by a broker)

| Broker (Company) Century 21 Core Partners | Licensee(s) (Name) Michael Segarra |
|---|---|
| Company License RB067826 | State License # RM422419 |
| Company Address 1925 East Market Street | Direct Phone(s) 7178251797 |
| York, PA 17402 | Cell Phone(s) 717-718-0749 |
| Company Phone 717-718-0749 | Email michael.segarra@century21core.com |
| Company Fax | Licensee(s) is (check only one): |
| Broker is (check only one): | ☑ Seller Agent (all company licensees represent Seller) |
| ☑ Seller Agent (Broker represents Seller only) | ☐ Seller Agent with Designated Agency (only Licensee(s) named |
| ☐ Dual Agent (See Dual and/or Designated Agent box below) | above represent Seller) |
| | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Buyer Initials: [P] [X]                    ASR Page 1 of 14                    Seller Initials: [ ] [ ]

1. **By this Agreement**, dated 01/20/2019
Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.
2. **PURCHASE PRICE AND DEPOSITS (4-14)**
   (A) Purchase Price $260,000
   (Two Hundred & Sixty Thousand)
   _____ U.S. Dollars), to be paid by Buyer as follows:
   | | |
   |---|---|
   | 1. Initial Deposit, within _____ days (5 if not specified) of Execution Date, if not included with this Agreement; | $ _____ |
   | 2. Additional Deposit within _____ days of the Execution Date; | $ _____ |
   | 3. Within 5 days of Approval from Bank approved Short sale price | $ 3,000 |
   Remaining balance will be paid at settlement
   (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.
   (C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____ ),
   who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.
3. **SELLER ASSIST (If Applicable) (1-10)**
   Seller will pay $ _____ or 0 _____ % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.
4. **SETTLEMENT AND POSSESSION (4-14)**
   (A) Settlement Date is Within 25 days of Bank approval of Short Sale _____, or before if Buyer and Seller agree.
   (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise
   (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here: _____
   (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
      1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
      2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.
   (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
   (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
   (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.
   (H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
      ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.
5. **DATES/TIME IS OF THE ESSENCE (1-10)**
   (A) Written acceptance of all parties will be on or before: 01/22/2019
   (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.
   (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be initialed and dated.
   (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.

Buyer Initials: _____ ☒        ASR Page 2 of 14        Seller Initials: [initials]

(E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

## 6. ZONING (4-14)

Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdividable) is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.

**Zoning Classification, as set forth in the local zoning ordinance:** Residential

## 7. FIXTURES AND PERSONAL PROPERTY (1-17)

(A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens, and other items including plumbing; heating; gas fireplace logs; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; television antennas, mounting brackets and hardware for television and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners; built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems. Unless stated otherwise, the following items are included in the sale, but not in the Purchase Price: _____

_____

(B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment systems, propane tanks, satellite dishes and security systems): _____

(C) EXCLUDED fixtures and items: _____

## 8. MORTGAGE CONTINGENCY (10-18)

☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency.

☑ ELECTED.

(A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $141,000 | Loan Amount $ |
| Minimum Term 30 years | Minimum Term _____ years |
| Type of mortgage FHA | Type of mortgage |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| Mortgage lender York Traditions Bank | Mortgage lender |
| Interest rate 4.5 %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of 4.75 %. Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. | Interest rate _____ %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____ %. Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

(B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage application(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case no later than **Within 20 days Bank approval**.

 1. If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to make a good faith effort to obtain mortgage financing.
 2. Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s):
     a. Does not satisfy the terms of Paragraph 8(A), OR
     b. Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be received the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writing by the mortgage lender(s) within _7_ DAYS after the date indicated in Paragraph 8(B), or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment).

Buyer Initials: _____    ASR Page 3 of 14    Seller Initials: _____

3. If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender(s)

(C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher or lower than the Purchase Price and/or market price of the Property.

(D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s), Buyer will do so at least ___15___ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage lender(s) to make the above mortgage term(s) available to Buyer.

(E) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage application (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s) identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process. Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan application.

(F) **Buyer will be in default of this Agreement if Buyer furnishes false information** to anyone concerning Buyer's financial and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to reject, or refuse to approve or issue, a mortgage loan commitment.

(G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within ___5___ DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's expense.

  1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.
  2. If Seller will not make the required repairs, **or if Seller fails to respond within the stated time, Buyer will,** within ___5___ DAYS, notify Seller of Buyer's choice to:
     a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as the Pre-Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreasonable), OR
     b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
  **If Buyer fails to respond** within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice to Seller within that time, **Buyer will accept the Property,** make the required repairs/improvements at Buyer's expense and agree to the RELEASE in Paragraph 28 of this Agreement.

### FHA/VA, IF APPLICABLE

(H) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $260,000 _____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the Property are acceptable.

Warning: Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration Transactions, provides, "Whoever for the purpose of influencing in any way the action of such Department, makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years, or both."

(I) **U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement**
  ☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that FHA will not perform a home inspection nor guarantee the price or condition of the Property.

(J) **Certification** We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in connection with this transaction is attached to this Agreement.

Buyer Initials: 

ASR Page 4 of 14

Seller Initials: 

9. **CHANGE IN BUYER'S FINANCIAL STATUS (9-18)**
If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change in employment, failure or loss of sale of Buyer's home; Buyer having incurred a new financial obligation; entry of a judgment against Buyer. **Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to purchase.**

10. **SELLER REPRESENTATIONS (4-14)**

   (A) **Status of Water**
   Seller represents that the Property is served by:
   ☑ Public Water  ☐ Community Water  ☐ On-site Water  ☐ None  ☐ _____

   (B) **Status of Sewer**
   1. Seller represents that the Property is served by:
   ☑ Public Sewer  ☐ Community Sewage Disposal System  ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
   ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)  ☐ Holding Tank (see Sewage Notice 3)
   ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 4; see Sewage Notice 4, if applicable)
   ☐ None (see Sewage Notice 1)  ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)

   2. **Notices Pursuant to the Pennsylvania Sewage Facilities Act**
   **Notice 1:** There is no currently existing community sewage system available for the subject property. Section 7 of the Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter, repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The local agency charged with administering the Act will be the municipality where the Property is located or that municipality working cooperatively with others.
   **Notice 2:** This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions of Section 7 of the Pennsylvania Sewage Facilities Act. (Section 7 provides that a permit may not be required before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.
   **Notice 3:** This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site. Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank from the date of its installation or December 14, 1995, whichever is later.
   **Notice 4:** An individual sewage system has been installed at an isolation distance from a well that is less than the distance specified by regulation. The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the horizontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the absorption area shall be 100 feet.
   **Notice 5:** This lot is within an area in which permit limitations are in effect and is subject to those limitations. Sewage facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.

   (C) **Historic Preservation**
   Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____

   (D) **Land Use Restrictions**
   1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the following Act(s) (see Notices Regarding Land Use Restrictions below):
   ☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. § 901 et seq.)
   ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
   ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
   ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
   ☐ Other _____

   2. **Notices Regarding Land Use Restrictions**
   a. **Pennsylvania Right-To-Farm Act:** The property you are buying may be located in an area where agricultural operations take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.

b. **Clean and Green Program**: Properties enrolled in the Clean and Green Program receive preferential property tax assessment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that may result in the future as a result of any change in use of the Property or the land from which it is being separated.

c. **Open Space Act**: This Act enables counties to enter into covenants with owners of land designated as farm, forest, water supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.

d. **Conservation Reserve (Enhancement) Program**: Properties enrolled in the Conservation Reserve Program or CREP are environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer has been advised of the need to determine the restrictions on development of the Property and the term of any contract now in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

(E) **Real Estate Seller Disclosure Law**

Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale of condominium and cooperative interests.

(F) **Public and/or Private Assessments**

1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____

2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____

(G) **Highway Occupancy Permit**

Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

## 11. WAIVER OF CONTINGENCIES (9-05)

If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, **Buyer's failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.**

## 12. BUYER'S DUE DILIGENCE/INSPECTIONS (10-18)

(A) **Rights and Responsibilities**

1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors; in addition, unless otherwise agreed, only Parties and their real estate licensee(s) may attend any inspections.

2. Buyer may make two pre-settlement walk-through inspections of the Property for the limited purpose of determining that the condition of the Property is as required by this Agreement and any addenda. Buyer's right to these inspections is not waived by any other provision of this Agreement.

3. Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.

4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.

5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.

(B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D) for Notices Regarding Property and Environmental Inspections)

(C) For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete inspections, obtain any Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

 

## Home/Property Inspections and Environmental Hazards (mold, etc.)

**Elected** [X]    **Waived** [ ]

Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior doors; exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances; electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetration; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environmental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the home inspection must be performed by a full member in good standing of a national home inspection association, or a person supervised by a full member of a national home inspection association, in accordance with the ethical standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or architect. (See Notices Regarding Property & Environmental Inspections)

## Wood Infestation

**Elected** [X]    **Waived** [ ]

Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mortgage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesticide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property.

## Deeds, Restrictions and Zoning

**Elected** [ ]    **Waived** [X]

Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordinances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking) is permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: _____

## Water Service

**Elected** [ ]    **Waived** [X]

Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous condition, at Seller's expense, prior to settlement.

## Radon

**Elected** [X]    **Waived** [ ]

Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 working levels or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can increase the risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any person who tests, mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department of Environmental Protection. Information about radon and about certified testing or mitigation firms is available through Department of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State Office Building, P.O. Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov

## On-lot Sewage (If Applicable)

**Elected** [ ]    **Waived** [X]

Buyer may obtain an Inspection of the individual on-lot sewage disposal system, which may include a hydraulic load test, from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's expense, will locate, provide access to, empty the individual on-lot sewage disposal system and provide all water needed, unless otherwise agreed. Seller will restore the Property to its previous condition, at Seller's expense, prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot Sewage Inspection Contingency.

## Property and Flood Insurance

**Elected** [X]    **Waived** [ ]

Buyer may determine the insurability of the Property by making application for property and casualty insurance for the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with the insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone, Buyer may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more prior to Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insurance agents regarding the need for flood insurance and possible premium increases.

## Property Boundaries

**Elected** [ ]    **Waived** [X]

Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical representations of size of property are approximations only and may be inaccurate.

---

**Buyer Initials:** [initials]    ASR Page 7 of 14    **Seller Initials:** [initials]

Lead-Based Paint Hazards (For Properties built prior to 1978 only)

Elected [ ]    Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct a    Waived [X]
               risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint haz-
               ards. Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard
               Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved
               lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a sep-
               arate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any
               lead-based paint records regarding the Property.
               Other

Elected [ ]                                                                                                                          Waived [ ]

The Inspections elected above do not apply to the following existing conditions and/or items: _____

---

(D) Notices Regarding Property & Environmental Inspections
   1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating
      the surface of a structure where it may cause mold and damage to the building's frame.
   2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.
   3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal
      of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsi-
      bility to dispose of them properly.
   4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer
      to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop
      the property would be affected or denied because of its location in a wetlands area.
   5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores,
      pollen and viruses) have been associated with allergic responses.
   6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be
      directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C.
      20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health
      Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health
      and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by
      calling 1-877-724-3258.

13. **INSPECTION CONTINGENCY (10-18)**                          *From Bank approval of Short Sale. See Addendum*
    (A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected
        in Paragraph 12(C).
    (B) **Within the stated Contingency Period** and as the result of any Inspection elected in Paragraph 12(C), except as stated in
        Paragraph 13(C):
        1. If the results of the inspections elected in Paragraph 12(C) are satisfactory to Buyer, Buyer WILL present all Report(s) in
           their entirety to Seller, accept the Property with the information stated in the Report(s) and agree to the RELEASE in
           Paragraph 28 of this Agreement, OR
        2. If the result of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL present all Report(s) in
           their entirety to Seller and terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer
           according to the terms of Paragraph 26 of this Agreement, OR
        3. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL present all Report(s) in
           their entirety to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by
           Buyer.
        The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the
        corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the cor-
        rections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or govern-
        mental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.
        a. Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation
           Period. During the Negotiation Period:
           (1) Seller will acknowledge in writing Seller's agreement to satisfy all the terms of Buyer's Proposal OR
           (2) Buyer and Seller will negotiate another mutually acceptable written agreement, providing for any repairs or improve-
               ments to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
           If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable writ-
           ten agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the
           Negotiation Period ends.
        b. If no mutually acceptable written agreement is reached, or if Seller fails to respond during the Negotiation Period, within
           _____ days (2 if not specified) following the end of the Negotiation Period, Buyer will:
           (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this
               Agreement, OR
           (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
               of Paragraph 26 of this Agreement.
        **If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this**

Buyer Initials: [ ] [ ]                        ASR Page 8 of 14                        Seller Initials: [ ] [ ]

Agreement by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the Negotiation Period.

(C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____ days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected completion date for corrective measures. Within __5__ DAYS of receiving Seller's Proposal, or if no Proposal is provided within the stated time, Buyer will notify Seller in writing of Buyer's choice to:

  1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
  2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, OR
  3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by any mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer may, within __5__ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

  **If Buyer fails to respond** within the time stated in Paragraph 13(C) **or fails to terminate** this Agreement by written notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

14. **TITLES, SURVEYS AND COSTS (9-18)**

(A) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will order from a reputable title company for delivery to Seller a comprehensive title report on the Property. Upon receipt, Buyer will deliver a free copy of the title report to Seller

(B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions; **Buyer should consult with a title insurance agent about Buyer's options.** Buyer agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an owner's title insurance policy.

(C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.

(D) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal description of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by the mortgage lender will be obtained and paid for by Buyer.

(E) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular rates, free and clear of all liens, encumbrances, and easements, **excepting however** the following: existing deed restrictions; historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the ground; easements of record; and privileges or rights of public service companies, if any.

(F) In the event of a change in Seller's financial status affecting Seller's ability to convey title to the Property on or before the Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all liens and encumbrances against the Property.

(G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as specified in Paragraph 14(E), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(D).

(H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation about the status of those rights unless indicated elsewhere in this Agreement.

☐ **Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.**

(I) **COAL NOTICE (Where Applicable)**

THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

(J) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here: _____

---

Buyer Initials: [handwritten initials]      ASR Page 9 of 14      Seller Initials: 

(K) 1. This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____

☐ Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.

2. **Notices Regarding Private Transfer Fees:** In Pennsylvania, Private Transfer Fees are defined and regulated in the Private Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obligation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed, the Act gives certain rights and protections to buyers.

## 15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (9-18)

(A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are received after Seller has signed this Agreement and before settlement, Seller will within __5__ DAYS of receiving the notices and/or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:

1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR

2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails **within the stated time to notify Buyer whether Seller will comply,** Buyer will notify Seller in writing within __5__ DAYS that Buyer will:

   a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in Paragraph 28 of this Agreement, OR

   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

   If Buyer fails to respond within the time stated in Paragraph 15(A)(2) or fails to terminate this Agreement by written notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

(B) If required by law, within __30__ DAYS from the Execution Date of this Agreement, but in no case later than __15__ DAYS prior to Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of the Property. If Buyer receives a notice of any required repairs/improvements, Seller will promptly deliver a copy of the notice to Seller.

1. Within __5__ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a copy of the notice to Buyer and notify Buyer in writing that Seller will:

   a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR

   b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will notify Seller in writing within __5__ DAYS that Buyer will:

      (1) Accept a temporary access certificate or temporary use and occupancy certificate, agree to the RELEASE in Paragraph 28 of this Agreement and make the repairs at Buyer's expense after settlement, OR

      (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

   If Buyer fails to respond within the time stated in Paragraph 15(B)(1)(b) **or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, and Buyer accepts the responsibility to perform the repairs/improvements according to the terms of the notice provided by the municipality.**

3. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph, Seller will perform all repairs/improvements as required by the notice at Seller's expense. **Paragraph 15(B)(3) will survive settlement.**

## 16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)

(A) Property is **NOT** a Condominium or part of a Planned Community unless checked below.

☐ CONDOMINIUM. The Property is a CONDOMINIUM that is primarily run by a unit owners' association. Section 3407 of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.

☑ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the declaration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions set forth in Section 5407(a) of the Act.

(B) **THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY:**

If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant), Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public

Buyer Initials: 

ASR Page 10 of 14

Seller Initials: _JKD_ _JKD_
01/23/19 01/24/19
11:29 AM EST 11:24 AM EST

Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.

(C) THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY:

1. Within __15__ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides that the association is required to provide these documents within 10 days of Seller's request.

2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the association in the Certificate.

3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.

4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender.

## 17. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)

In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a property at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the property and result in a change in property tax.

## 18. MAINTENANCE AND RISK OF LOSS (1-14)

(A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property) specifically listed in this Agreement in its present condition, normal wear and tear excepted.

(B) If any part of the Property included in the sale fails before settlement, Seller will:
  1. Repair or replace that part of the Property before settlement, OR
  2. Provide prompt written notice to Buyer of Seller's decision to:
     a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender, if any, OR
     b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed part of the Property.
  3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, **or if Seller fails to notify Buyer of Seller's choice**, Buyer will notify Seller in writing within __5__ DAYS or before Settlement Date, whichever is earlier, that Buyer will:
     a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
     b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

     If Buyer fails to respond within the time stated in Paragraph 18(B)(3) or fails to terminate this Agreement by written notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

(C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not replaced prior to settlement, Buyer will:
  1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
  2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

## 19. HOME WARRANTIES (1-10)

At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.

## 20. RECORDING (9-05)

This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

## 21. ASSIGNMENT (1-10)

This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

Buyer Initials:         ASR Page 11 of 14        Seller Initials:

## 22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)

(A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws of the Commonwealth of Pennsylvania.

(B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

## 23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)

The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S. real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons purchasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. taxation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/Buyer you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold, you may be held liable for the tax.

## 24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)

The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C'S. § 9791 et seq.) providing for community notification of the presence of certain convicted sex offenders. **Buyers are encouraged to contact the municipal police department or the Pennsylvania State Police** for information relating to the presence of sex offenders near a particular property, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.

## 25. REPRESENTATIONS (1-10)

(A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

(B) Unless otherwise stated in this Agreement, **Buyer has inspected the Property (including fixtures and any personal property specifically listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the Property IN ITS PRESENT CONDITION,** subject to inspection contingencies elected in this Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems contained therein.

(C) Any repairs required by this Agreement will be completed in a workmanlike manner.

(D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

## 26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (4-14)

(A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID. Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

(B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:

1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.

3. According to the terms of a final order of court.

4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))

(C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____ days (180 if not specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the subject of litigation or mediation. If Broker has received verifiable written notice of litigation prior to the receipt of Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation for any portion of the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue litigation even after a distribution is made.

 

(D) Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.

(E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
1. Fail to make any additional payments as specified in Paragraph 2, OR
2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's legal or financial status, OR
3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

(F) **Unless otherwise checked in Paragraph 26(G)**, Seller may elect to retain those sums paid by Buyer, including deposit monies:
1. On account of purchase price, OR
2. As monies to be applied to Seller's damages, OR
3. As liquidated damages for such default.

(G) ☑ **SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.**

(H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer and Seller are released from further liability or obligation and this Agreement is VOID.

(I) Brokers and licensees are not responsible for unpaid deposits.

### 27. MEDIATION (1-10)
Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies, to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation system offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before any party to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.

### 28. RELEASE (9-05)
Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

### 29. REAL ESTATE RECOVERY FUND (4-18)
A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658.

### 30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)
(A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s) and Closing Disclosure(s) upon receipt.

(B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be satisfied by communication/delivery to the Broker for Buyer, if any, **except for documents required to be delivered pursuant to Paragraph 16.** If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller, unless otherwise agreed to by the parties.

Buyer Initials: 

ASR Page 13 of 14

Seller Initials: 

**31. HEADINGS (4-14)**

The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

**32. SPECIAL CLAUSES (1-10)**

(A) The following are attached to and made part of this Agreement if checked:
- ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
- ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
- ☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
- ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
- ☐ Appraisal Contingency Addendum (PAR Form ACA)
- ☑ Short Sale Addendum (PAR Form SHS)
- ☑ Short Sale Addendum & Offer Instructions
- ☐ _____
- ☐ _____

(B) Additional Terms:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

**This Agreement may be executed in one or more counterparts,** each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties

**NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

Return of this Agreement, and any addenda and amendments, including **return by electronic transmission,** bearing the signatures of all parties, constitutes acceptance by the parties.

| | | |
|---|---|---|
| J | H | Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336. |
| J | H | Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement. |
| O | H | Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before signing this Agreement. |
| | | Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978). |

| BUYER | | DATE |
|---|---|---|
| BUYER | _(signature)_ | DATE Jan/ 20/19 |
| BUYER | | DATE |

Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

| SELLER | Jonathan A Dickey, Sr | DATE |
|---|---|---|
| SELLER | Queen A Dickey | DATE |
| SELLER | | DATE |

ASR Page 14 of 14

# SHORT SALE ADDENDUM TO AGREEMENT OF SALE

This form recommended and approved for, but not restricted in use by, the members of the Pennsylvania Association of Realtors® (PAR)

**SHS**

**PROPERTY** 406 Wynwood rd, York, PA 17402
**SELLER** Jonathan A. Dickey, Sr and Queen A. Dickey
**BUYER** Jimmy Huynh

1. This transaction is a potential Short Sale.

2. A Short Sale is a transaction in which Seller's proceeds are less than the amount necessary to pay off liens secured by the property. Examples of such liens include, but are not limited to, mortgages, home equity lines of credit, tax claims, homeowners' association/condominium fees, and legal judgments.

3. The Agreement of Sale is contingent upon Seller obtaining approval of the terms and conditions of the Agreement of Sale by each lender or other lien holder being asked to accept a payoff less than the full amount due ("Creditor(s)"). Buyer and Seller acknowledge that it may take an extended period of time to obtain Creditor approval of a Short Sale. Seller makes no representations about the response time of Creditor(s).
**Notice Regarding Maintenance and Repair:** Buyer is advised that in a Short Sale, creditors will often retain the right to approve all financial aspects of the transaction, including expenses for repairs or ongoing maintenance of the Property. Creditors may not approve seller expenditures for these purposes, and Seller's financial situation may not allow for these costs to be covered directly by Seller.

4. Seller will submit the executed Agreement of Sale and all required documentation to Creditor(s) within __5__ DAYS of execution of the Agreement of Sale.
**Notice Regarding Seller Documentation:** Seller may be required to provide documentation to Creditor(s) during the Short Sale process. Some items that may be requested during a Short Sale include, but are not limited to: a hardship letter, hardship proof, financial statements, bank statements, pay stubs, tax returns, list of repairs, listing agreement, agreement of sale, net sheet, and an MLS printout.

5. If Creditor(s) requires a change in the terms or conditions relating to the transaction as a condition of approving the Agreement of Sale, Seller will communicate these requirements to Buyer in writing within __5__ DAYS of receiving the requirements from Creditor(s). Buyer and Seller are not bound by any changes proposed by Creditor(s) unless Buyer and Seller agree in writing to make those changes. If either Buyer or Seller refuse to accept any changes required by Creditor(s) as a condition of approving the Agreement of Sale, Buyer or Seller may terminate the Agreement by written notice to the other party, with all deposit monies returned to the Buyer according to the terms of the Agreement of Sale.

6. (A) A mortgage application will be made:
   ☐ within the time period stated in the Agreement of Sale.
   ☒ within_____ days (7 if not specified) of receipt of written approval from Creditor(s).
   (B) Inspections elected in the Agreement of Sale will be performed
   ☐ within the time period stated in the Agreement of Sale.
   ☒ within_____ days (10 if not specified) of Buyer's receipt of written approval from Creditor(s).

7. If Creditor approval of the Agreement of Sale has not been received by_____, Buyer or Seller may terminate the Agreement of Sale by written notice to the other party, with all deposit monies returned to the Buyer according to the terms of the Agreement of Sale.

**All other terms and conditions of the Agreement of Sale remain unchanged and in full effect. Buyer and Seller are advised to seek professional legal and financial advice before signing if either party desires such advice.**

| | | | |
|---|---|---|---|
| BUYER | | DATE | Jan/20/19 |
| BUYER | | DATE | |
| BUYER | | DATE | |
| SELLER | | DATE | |
| SELLER | | DATE | |
| SELLER | | DATE | |

Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2016

# EXHIBIT "B"



April 23, 2019

  QUEEN A DICKEY
406 WYNWOOD RD
YORK, PA 17402-0000

**Account Number:**   0015206071
**Property Address:**   406 WYNWOOD ROAD
YORK, PA 17402

Dear QUEEN A DICKEY:

Select Portfolio Servicing, Inc. (SPS), the mortgage servicer on the above referenced account, is sending this to you to provide information regarding the lien on the real property referenced above. Our records indicate that your obligation has either been discharged or is subject to an automatic stay order under the United States Bankruptcy Code. This notice and any enclosed documents are for compliance and informational purposes only and do not constitute a demand for payment or an attempt to collect such obligation. Even though your personal liability on the note may be discharged or subject to an automatic stay, the terms of the mortgage remain in effect and the owner of the mortgage, as lien holder, continues to have a lien on the real property.

SPS received your request to accept a compromised payoff of the above referenced property, or "Short Sale." Please be advised that SPS conditionally agrees to accept your proposed Short Sale and will release the lien on the property, contingent upon the following terms. It is important that you read the enclosed documents carefully and comply with their terms.

- **Terms** - SPS must receive the net proceeds from the Short Sale in an amount not less than $236,185.90 no later than June 7, 2019 (the Closing Date). The net proceeds must be in the form of wired funds or certified funds, and must be made payable to Select Portfolio Servicing, Inc. No personal checks will be accepted. Wiring funds is the preferred method of payment, and instructions are attached. Any extension of the Closing Date requires SPS's written approval.
  - Payoff funds and a final HUD-1 Settlement Statement/Closing Disclosure must be received by SPS within 48 hours of closing in accordance with the attached wiring instructions or funds may be returned.

- **Changes** - Any change to the terms and representations contained in the request or the attached sales contract between you and the buyer prior to closing must be approved by SPS in writing. SPS is under no obligation to approve such changes.

- **HUD-1/Closing Disclosure** - A copy of the final HUD-1 Settlement Statement/Closing Disclosure must be faxed to SPS at 866-867-3019, within two (2) business days of the closing. Both the buyer(s) and seller(s) represented in the transaction must sign the final HUD-1/Closing Disclosure. There must not be any change in the terms between the proposed HUD-1/Closing Disclosure and the final HUD-1/Closing Disclosure, and the funds remitted must agree with the final HUD-1/Closing Disclosure. As long as these terms are met, pre-approval of the proposed HUD-1/Closing Disclosure is not required.



00203773000013010600

- **Seller Funds** - In consideration for SPS's agreement to accept the Short Sale, in no event shall you receive any funds from the Short Sale (unless otherwise approved in advance by SPS). Any surplus funds above the agreed upon net proceeds at the time of closing are the exclusive property of SPS, and you agree that any such funds will be remitted to SPS, made payable to Select Portfolio Servicing, Inc. If SPS receives/retains proceeds in excess of the amount that, combined with the net proceeds, would have satisfied the lien in full, such surplus funds will be returned to you.

- **Tax Consequences** – A short payoff of the mortgage may have tax consequences. You are advised to contact a tax professional to determine the extent of tax liability, if any.

- **Closing Instructions** - The attached Closing Instructions should be provided to the settlement agent, and signed at the closing. All terms and conditions of the Closing Instructions must be met in their entirety. Within two (2) business days of the completed closing, a copy of the signed Closing Instructions must be returned to SPS via fax at 866-867-3019 or by email to ClosingDocs@spservicing.com.

- **Bankruptcy** – If you are currently in bankruptcy or you file bankruptcy prior to closing, you must obtain any required consent or approval of the Bankruptcy Court.

- **Insurance Claim Proceeds** - This approval is conditioned upon you waiving your rights to any escrowed funds or refunds from prepaid expenses. You also agree that any trailing proceeds from filed hazard insurance claims will be sent to and retained by SPS as additional recovery toward the Short Sale loss. If SPS receives/retains proceeds in excess of the amount that, combined with the net proceeds, would have satisfied the loan in full, such surplus funds will be returned to you.

- **Property Registrations and Inspections** - You must have completed all applicable property registrations and inspections, as may be required by any federal, state, or municipal laws.

- **Interest in the Property** - All parties who have an interest in this transaction must approve the transaction.

- **Arm's Length Transaction Affidavit** - The enclosed Arm's Length Transaction Affidavit must be signed and dated by all buyers, sellers, and agents involved in the short sale transaction. This signed affidavit must be faxed to SPS at 801-270-7833, within two (2) business days of the closing.

- **Payment Instructions** – Payoff funds and a final HUD-1 Settlement Statement/Closing Disclosure must be received by SPS within 48 hours of closing in accordance with the attached wiring instructions.

- **Closing Instructions** – Please see full list of required documentation attached.

If any of the above conditions are not timely met, this approval will be void and the lien will not be released. If the above conditions are not timely met, SPS may institute or continue foreclosure proceedings if previously initiated. Provided that all terms and conditions set forth above has been satisfied, written confirmation that the payoff funds are in Escrow, along with a final HUD-1 Settlement Statement/Closing Disclosure, shall remove all conditions of approval for this Short Sale.

**SPS is committed to your assistance. If after reading through the terms and conditions of the Short Sale, you find that you are unable to meet the requirements or you have further questions, please contact our office at the phone number listed below.**

In addition to short sales, SPS offers many assistance options designed for customers who are experiencing temporary or permanent hardships. These options are offered at no cost to our customers and may include structured repayment plans, modifications, or account settlement alternatives, such as short sales or deeds in lieu of foreclosure. Please call us at 888-818-6032 if you would like to discuss other loss mitigation options.

Upon satisfaction of all terms of this approval, the mortgage will be discharged in its entirety, and a lien release document will be forwarded to your county for recording. The release document is an indication that the lien is considered satisfied by SPS. This approval is for the account number referenced above, and SPS makes no warranties and/or takes no responsibility for any liens senior or junior to our position being released in conjunction with this satisfaction. If a foreclosure action was commenced against this property, then upon satisfaction of all terms of this approval, the pending foreclosure action will be dismissed, and appropriate instruments recorded.

## Notice of Error or Information Request

If you believe there has been an error with the account or you require additional information, you may send a written Notice of Error or Information Request. All Notices of Error or Information Requests must be sent in writing to the address listed below, as this is our exclusive address under Federal law for these matters. If you send your correspondence to any other address, it may not be processed in accordance with Federal law.

**Select Portfolio Servicing, Inc.**
**PO Box 65277 Salt Lake City, UT 84165-0277**

## Servicemembers Civil Relief Act (SCRA)

SPS is committed to home ownership assistance for active servicemembers and veterans of the United States military. You may be entitled to certain protections under the federal Servicemembers Civil Relief Act (50 U.S.C. 3901 et seq.) regarding your interest rate and the risk of foreclosure if you are a servicemember or a dependent of a servicemember. Counseling for covered servicemembers is available at agencies such as Military OneSource (800-342-9647 or www.militaryonesource.mil) and Armed Forces Legal Assistance (http://legalassistance.law.af.mil). Note: your state may have more expansive eligibility criteria than below. Please contact us as soon as possible if you have any questions or believe you may be eligible.

Eligible service may include, but is not limited to:

- Regular members of the U.S. Armed Forces (Army, Navy, Air Force, Marine Corps and Coast Guard), or
- Reserve and National Guard personnel who have been activated and are on Federal active duty, or
- National Guard personnel under a call or order to active duty for more than 30 consecutive days under section 502(f) of title 32, United States Code, for purposes of responding to a national emergency declared by the President and supported by Federal funds, or
- Active service members of the commissioned corps of the Public Health Service and the National Oceanic and Atmospheric Administration, or
- Certain United States citizens serving with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action.

Please send written notice of military service as soon as possible to:

**Select Portfolio Servicing, Inc.**
**PO Box 65250 Salt Lake City, UT 84165-0250**

If you have any questions, you have been assigned a Relationship Manager to assist you through this process. Your assigned Relationship Manager, Marcelo Jimenez Silva, can be reached toll free at 888-818-6032 Ext. 36945 or by email at Relationship.Manager@SPServicing.com.



If you have any questions regarding eligibility and application requirements, please contact our Loan Resolution Department. Our toll-free number is 888-818-6032, and representatives are available Monday through Thursday between the hours of 8 a.m. and 11 p.m., Friday from 8 a.m. to 9 p.m., and Saturday from 8 a.m. to 2 p.m., Eastern Time.

Sincerely,

_Signature of Servicer Representative_

Kevin Warren
Printed Name of Servicer Representative

Senior Vice President
Title

April 23, 2019
Date

**Attachments:**     Closing Instructions
Affidavit of "Arms Length Transaction"
Certified Funds Remittance

Esta carta contiene información importante concerniente a sus derechos. Por favor, traduzca esta carta. Nuestros representantes bilingües están a su disposición para contestar cualquier pregunta. Llamenos al numero 800-831-0118 y seleccione/marque la opción 2.

This information is intended for informational purposes only and is not considered an attempt to collect a debt.

# EXHIBIT "C"

# Closing Disclosure

*This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.*

## Closing Information

| | |
|---|---|
| **Date Issued** | 03/13/19 |
| **Closing Date** | 05/30/19 |
| **Disbursement Date** | 05/30/19 |
| **Settlement Agent** | Even Par Settlement Services, LLC |
| **File #** | EST CLOSING COSTS |
| **Property** | 406 Wynwood Road |
| | York PA 17402 |
| **Sale Price** | $ 260,000 |

## Transaction Information

| | |
|---|---|
| **Borrower** | Jimmy Huynh |
| | xxx |
| | York, PA 17401 |
| **Seller** | Jonathon A. Dickey, Sr. and Queen A. Dickey |
| | xxx |
| | York, PA 17401 |
| **Lender** | York Traditions Bank |
| | ISAOA/ATIMA |

## Loan Information

| | |
|---|---|
| **Loan Term** | 30 years |
| **Purpose** | Purchase |
| **Product** | Fixed Rate |
| **Loan Type** | ☐ Conventional ☒ FHA ☐ VA ☐ _____ |
| **Loan ID #** | |
| **MIC #** | |

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| **Loan Amount** | $ 141,432 | NO |
| **Interest Rate** | 4.5% | NO |
| **Monthly Principal & Interest**<br>*See Projected Payments below for your Estimated Total Monthly Payment* | $ 716.62 | NO |
| | | **Does the loan have these features?** |
| **Prepayment Penalty** | | NO |
| **Balloon Payment** | | NO |

## Projected Payments

| Payment Calculation | Years 1-30 |
|---|---|
| Principal & Interest | $ 716.62 |
| Mortgage Insurance | + 0.00 |
| Estimated Escrow<br>*Amount can increase over time* | + 0.00 |
| **Estimated Total Monthly Payment** | $ 716.62 |

| | | This estimate includes | In escrow? |
|---|---|---|---|
| **Estimated Taxes, Insurance & Assessments**<br>*Amount can increase over time*<br>*See page 4 for details* | $ 0.00<br>a month | ☒ Property Taxes | YES |
| | | ☒ Homeowner's Insurance | YES |
| | | ☒ Other: County Taxes | YES |
| | | ☒ Other: School Taxes | YES |
| | | *See Escrow Account on page 4 for details. You must pay for other property costs separately.* | |

## Costs at Closing

| | | |
|---|---|---|
| **Closing Costs** | $ 18,027.10 | Includes $5,462.45 in Loan Costs + $12,564.65 in Other Costs.<br>*See page 2 for details.* |
| **Cash to Close** | $ 135,804.00 | Includes Closing Costs. *See Calculating Cash to Close on page 3 for details.* |

Case 1:17-bk-01571-HWV Doc 60 Filed 05/02/19 Entered 05/02/19 10:58:03 Desc
Main Document Page 34 of 41

## Closing Cost Details

| Loan Costs | | Borrower-Paid | | Seller-Paid | | Paid by Others |
|---|---|---|---|---|---|---|
| | | At Closing | Before Closing | At Closing | Before Closing | |
| **A. Origination Charges** | | **$ 1,872.95** | | | | |
| 01 0.625% of Loan Amount (Points) | to York Traditions Bank | $ 883.95 | | | | |
| 02 Origination Fee | to York Traditions Bank | $ 989.00 | | | | |
| 03 | | | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **B. Services Borrower Did Not Shop For** | | **$ 3,172.50** | | | | |
| 01 Appraisal | | $ 525.00 | | | | |
| 02 Appraisal Reinspect | | $ 125.00 | | | | |
| 03 Credit Report | | $ 75.00 | | | | |
| 04 Flood Cert | | $ 15.00 | | | | |
| 05 PMI | | $ 2,432.50 | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| 09 | | | | | | |
| 10 | | | | | | |
| **C. Services Borrower Did Shop For** | | **$ 417.00** | | | | |
| 01 Title – Closing Protection Letter | to Even Par Settlement Services, | $ 125.00 | | | | |
| 02 Title – Courier Fees | to Even Par Settlement Services, | $ 50.00 | | | | |
| 03 Title – Document Prep Fee | to Even Par Settlement Services, | $ 25.00 | | | | |
| 04 Title – Endorsements | to Even Par Settlement Services, | $ 150.00 | | | | |
| 05 Title – Notary Fees | to Even Par Settlement Services, | $ 25.00 | | | | |
| 06 Title – Tax Certification | to Even Par Settlement Services, | $ 25.00 | | | | |
| 07 Title – Wiring Fees | to Even Par Settlement Services, | $ 17.00 | | | | |
| 08 | | | | | | |
| 09 | | | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | **$ 5,462.45** | | | | |
| Loan Costs Subtotals (A + B + C) | | $ 5,462.45 | | | | |

## Other Costs

| | | | | | |
|---|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | | **$ 2,828.50** | | | |
| 01 Recording Fees | Deed:$95.25 Mortgage:$133.25 | $ 228.50 | | | |
| 02 Transfer Tax | to York County Recorder of Deed | | | $ 2,600.00 | |
| 03 Transfer Taxes | to York County Recorder of Deed | $ 2,600.00 | | | |
| **F. Prepaids** | | **$ 934.87** | | | |
| 01 Homeowner's Insurance Premium | to UPFRONT ESTIMATED (12 mo.) | $ 900.00 | | | |
| 02 Mortgage Insurance Premium | ( mo.) | | | | |
| 03 Prepaid Interest | $17.68 per day from 02/21/19 to 03/01/19 | $ 34.87 | | | |
| 04 Property Taxes | ( mo.) | | | | |
| 05 | | | | | |
| **G. Initial Escrow Payment at Closing** | | **$ 6,864.28** | | | |
| 01 Homeowner's Insurance | $75.00 per month for 1 mo. | $ 75.00 | | | |
| 02 Mortgage Insurance | per month for mo. | | | | |
| 03 Twp Taxes | See Additional G.03 Items | $ 667.29 | | | |
| 04 County Taxes | $165.55 per month for 13 mo. | $ 2,152.15 | | | |
| 05 School Taxes | $661.64 per month for 6 mo. | $ 3,969.84 | | | |
| 06 | | | | | |
| 07 | | | | | |
| 08 Aggregate Adjustment | | | | | |
| **H. Other** | | **$ 1,937.00** | | | |
| 01 Bankruptcy Fee | to Schiffman Sheridan and | | | $ 3,181.00 | |
| 02 Broker Fee | | | | | |
| 03 Commission | to ReMax Patriots | | | $ 4,355.00 | |
| 04 Commission | to Century 21 Core Partners | | | $ 6,500.00 | |
| 05 Deed Prep | to LOCAF | | | $ 100.00 | |
| 06 ESTIMATED Refuse due in arrears | to Springettsbury Twp | | | $ 1,100.00 | |
| 07 ESTIMATED TAXES | to Even Par Settlement Services, | | | $ 6,000.00 | |
| 08 MWR Fee | | | | $ 2,145.00 | |
| 09 Sewer Cert | | | | $ 25.00 | |
| 10 Title - Owner's Title Insurance (optional) | to Even Par Settlement Servic | $ 1,937.00 | | | |
| 11 Wiring fee - payoff | to Even Par Settlement Services, | | | $ 17.00 | |
| 12 | | | | | |
| 13 | | | | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | | **$ 12,564.65** | | | |
| Other Costs Subtotals (E + F + G + H) | | $ 12,564.65 | | | |
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | | **$ 18,027.10** | | | |
| Closing Costs Subtotals (D + I) | | $ 18,027.10 | | $ 26,023.00 | |
| Lender Credits | | | | | |

## Calculating Cash to Close

Use this table to see what has changed from your Loan Estimate.

| | Loan Estimate | Final | Did this change? |
|---|---|---|---|
| Total Closing Costs (J) | $ 0 | $ 18,027.10 | YES |
| Closing Costs Paid Before Closing | $ 0 | $ 0 | NO |
| Closing Costs Financed (Paid from your Loan Amount) | $ 0 | $ 0 | NO |
| Down Payment/Funds from Borrower | $ 0 | $ 118,568.00 | YES |
| Deposit | $ 0 | $ -3,000.00 | YES |
| Funds for Borrower | $ 0 | $ 0 | NO |
| Seller Credits | $ 0 | $ 0 | NO |
| Adjustments and Other Credits | $ 0 | $ 2,208.90 | YES |
| Cash to Close | $ 0 | $ 135,804.00 | |

## Summaries of Transactions

Use this table to see a summary of your transaction.

### BORROWER'S TRANSACTION

| K. Due from Borrower at Closing | | $ 280,236.00 |
|---|---|---|
| 01 Sale Price of Property | | $ 260,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | | |
| 03 Closing Costs Paid at Closing (J) | | $ 18,027.10 |
| 04 | | |
| **Adjustments** | | |
| 05 | | |
| 06 | | |
| 07 | | |
| **Adjustments for Items Paid by Seller in Advance** | | |
| 08 County/Town Taxes | 05/31/19 to 01/01/20 | $ 1,170.19 |
| 09 County Taxes | 05/31/19 to 01/01/20 | $ 364.38 |
| 10 School Taxes | 05/31/19 to 07/01/19 | $ 674.33 |
| 11 HOA Monthly Fee | | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |

| L. Paid Already by or on Behalf of Borrower at Closing | $ 144,432.00 |
|---|---|
| 01 Deposit | $ 3,000.00 |
| 02 Loan Amount | $ 141,432.00 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 | |
| 05 Seller Credit | |
| **Other Credits** | |
| 06 | |
| 07 | |
| **Adjustments** | |
| 08 | |
| 09 | |
| 10 | |
| 11 | |
| **Adjustments for Items Unpaid by Seller** | |
| 12 County/Town Taxes | |
| 13 County Taxes | |
| 14 School Taxes | |
| 15 | |
| 16 | |
| 17 | |

### SELLER'S TRANSACTION

| M. Due to Seller at Closing | | $ 262,208.90 |
|---|---|---|
| 01 Sale Price of Property | | $ 260,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | | |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| **Adjustments for Items Paid by Seller in Advance** | | |
| 09 County/Town Taxes | 05/31/19 to 01/01/20 | $ 1,170.19 |
| 10 County Taxes | 05/31/19 to 01/01/20 | $ 364.38 |
| 11 School Taxes | 05/31/19 to 07/01/19 | $ 674.33 |
| 12 HOA Monthly Fee | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |

| N. Due from Seller at Closing | $ 262,208.90 |
|---|---|
| 01 Excess Deposit | |
| 02 Closing Costs Paid at Closing (J) | $ 26,023.00 |
| 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 SHORT SALE PAYOFF | $ 236,185.90 |
| 05 Payoff of Second Mortgage Loan | |
| 06 | |
| 07 | |
| 08 Seller Credit | |
| 09 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| **Adjustments for Items Unpaid by Seller** | |
| 14 County/Town Taxes | |
| 15 County Taxes | |
| 16 School Taxes | |
| 17 | |
| 18 | |
| 19 | |

### CALCULATION

| Total Due from Borrower at Closing (K) | | $ 280,236.00 |
|---|---|---|
| Total Paid Already by or on Behalf of Borrower at Closing (L) | − | $ 144,432.00 |
| Cash to Close [X] From [ ] To Borrower | | $ 135,804.00 |

### CALCULATION

| Total Due to Seller at Closing (M) | | $ 262,208.90 |
|---|---|---|
| Total Due from Seller at Closing (N) | − | $ 262,208.90 |
| Cash [ ] From [ ] To Seller | | $ 0.00 |

# Additional Information About This Loan

## Loan Disclosures

### Assumption

If you sell or transfer this property to another person, your lender
☐ will allow, under certain conditions, this person to assume this loan on the original terms.

☒ will not allow assumption of this loan on the original terms.

### Demand Feature

Your loan
☐ has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.

☒ does not have a demand feature.

### Late Payment

If your payment is more than __ days late, your lender will charge a late fee of

### Negative Amortization    (Increase in Loan Amount)

Under your loan terms, you
☐ are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☐ may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☒ do not have a negative amortization feature.

### Partial Payments

Your lender
☐ may accept payments that are less than the full amount due (partial payments) and apply them to your loan.

☐ may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.

☒ does not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

### Security Interest

You are granting a security interest in
*406 Wynwood Road*
*York, PA 17402*

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

### Escrow Account

*For now,* your loan
☒ will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs over Year 1 | | Estimated total amount over year 1 for your escrowed property costs: *Property Taxes Homeowner's Insurance County Taxes School Taxes* |
| Non-Escrowed Property Costs over Year 1 | | Estimated total amount over year 1 for your non-escrowed property costs: You may have other property costs. |
| Initial Escrow Payment | $ 6,864.28 | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | $ 0.00 | The amount included in your total monthly payment. |

☐ will not have an escrow account because ☐ you declined it ☐ your lender does not offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | | |

### *In the future,*

Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.

## Loan Calculations

| | |
|---|---|
| **Total of Payments.** Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $ 0.00 |
| **Finance Charge.** The dollar amount the loan will cost you. | $ 0.00 |
| **Amount Financed.** The loan amount available after paying your upfront finance charge. | $ 0.00 |
| **Annual Percentage Rate (APR).** Your costs over the loan term expressed as a rate. This is not your interest rate. | 0 % |
| **Total Interest Percentage (TIP).** The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 0 % |

**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not yet received it, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of the loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,
- [ ] state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.
- [X] state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Mortgage Broker | Real Estate Broker (B) | Real Estate Broker (S) | Settlement Agent |
|---|---|---|---|---|---|
| **Name** | York Traditions Bank | | ReMax Patriots | Century 21 Core Partners | Even Par Settlement Services, LLC |
| **Address** | 226 Pauline Dr., PO Box 3658 York, PA 17402-0136 | | 1770 F Market St York, PA 17402 | 1925 Market Undef York, PA 17402 | 160 East Market St. York, PA 17401 |
| **NMLS ID** | | | | | |
| **PA License ID** | | | RB067528 | RB067826 | |
| **Contact** | | | Adam Flinchbaugh | Michael Segarra | Christopher A. Ferro |
| **Contact NMLS ID** | | | | | |
| **Contact PA License ID** | | | | | |
| **Email** | settlements@yorktradtionsbank.com | | myteam@adamflinchbaugh.com | michael.segarra@century21core.com | cara@evenparsettlement.com |
| **Phone** | (717)747-2651 | | (717)577-8953 | (717)718-0748 | (717)430-4970 |

## Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

| | |
|---|---|
| Jimmy Huynh | Date |
| CLOSING DISCLOSURE | |

Date

PAGE 5 OF 5 - LOAN ID #

# Closing Disclosure Form Addendum

**Borrower(s):**

Jimmy Huynh
xxx
York, PA 17401

**Seller(s):**

Jonathon A. Dickey, Sr. and Queen A. Dickey
xxx
York, PA 17401

| | |
|---|---|
| **Lender:** | York Traditions Bank ISAOA/ATIMA |
| **Settlement Agent:** | Even Par Settlement Services, LLC |
| | (717)430-4970 |
| **Settlement Date:** | May 30, 2019 |
| **Property Location:** | 406 Wynwood Road |
| | York, PA 17402 |

| Additional Disbursements Payee/Description | Borrower-Paid | | Seller-Paid | | Paid By Others |
|---|---|---|---|---|---|
| | At Closing | Before Closing | At Closing | Before Closing | |
| **Other Costs-Initial Escrow Payment At Closing** | | | | | |
| York Traditions Bank | $ 667.29 | | | | |
| Property Taxes | | | | | |
| $51.33 per month for 13 mo. | | | | | |
| County/Town Taxes | | | | | |
| County Taxes | | | | | |
| School Taxes | | | | | |
| **Line G.03 Total:** | **$ 667.29** | | | | |

| Payoffs Payee/Description | Borrower-Paid | | Seller-Paid | | Paid By Others |
|---|---|---|---|---|---|
| | At Closing | Before Closing | At Closing | Before Closing | |
| SHORT SALE PAYOFF | | | $ 236,185.90 | | |

| Prorations Description | Amount | From/Through | Buyer-Paid | | Seller-Paid | | Paid By Others |
|---|---|---|---|---|---|---|---|
| | | | At Closing | Before Closing | At Closing | Before Closing | |
| HOA Monthly Fee | | | | | | | |

LOAN ID #

# Closing Disclosure Form Addendum (Continued)

## Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

_____    _____
Jimmy Huynh                    Date